UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DEREK SIMPSON<br>*Plaintiff,*<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION<br>*Defendant* | C.A. No. 1:26-cv-00737 |

**COMPLAINT**

Plaintiff Derek Simpson ("Mr. Simpson" or "Plaintiff"), by and through his undersigned counsel, brings this action against Defendant the National Collegiate Athletic Association ("NCAA" or "Defendant"), and alleges as follows:

**INTRODUCTION**

1. Derek Simpson[1] is a Division I men's basketball student-athlete who comes to this Court as a last resort, and as a direct result of the NCAA's unlawful action in implementing a new eligibility rule on June 24, 2026 (hereinafter the "Five-Year eligibility Rule" or "5-in-5 Rule") in a manner designed to prevent Plaintiff from playing his sport at an NCAA member college or university for the 2026-2027 season.[2] Unless this Court grants Plaintiff both immediate and lasting relief, Plaintiff will incur significant irreparable harm and monetary damages. More specifically, Plaintiff will forever lose the opportunity to complete the remainder of his collegiate career alongside his teammates who will benefit from the rule change—as well as significant Name, Image, and Likeness ("NIL") compensation that is contingent on him playing this next season. And in some cases,

---

[1] Upon information and belief, Derek Simpson has been a party to two lawsuits in which the NCAA has been the Defendant. One of these lawsuits was filed in the State Court in North Carolina. Mr. Simpson was voluntarily dismissed from that lawsuit. The other lawsuit was filed in the State Court in Pennsylvania under a breach of contract claim. It is believed a State Court Judge in Pennsylvania has denied Mr. Simpson's request for a preliminary injunction in that suit.

[2] This rule is codified in section 12.6 of the Division I Manual and has been effective since August 1, 2026.

despite the NCAA's stated concern for athletes' educational opportunities, Plaintiff will lose the scholarship and opportunities that he is counting on to finish his desired degree.

2. At its core, the Five-Year Eligibility Rule provides for athletes in Division I programs to compete for five seasons in the five years following the first day of enrollment in a collegiate institution or the first semester following their 19th birthday, subject to narrow predetermined exemptions. The Plaintiff has completed just four years of collegiate sports. Plaintiff is under 24 years of age. Under a proper reading of the NCAA's own rule, he should be entitled to a fifth season. The NCAA, however, has determined otherwise.

3. Through no fault of his own, Plaintiff has been arbitrarily singled out by the NCAA to be limited to four seasons of eligibility and deprived of the baseline fifth season of competition that the NCAA now deems to be the standard that it affords all student athletes except those who graduated high school in 2022. As a result of the NCAA's arbitrary decision, and absent intervention of this Court, Plaintiff will be irreparably harmed by being deprived of the equal opportunity to participate in five seasons of athletic competition within the five-year window afforded to all other athletes and deprived of the tremendous educational benefits that come with such collegiate competition.

4. The NCAA, for its part, will improperly foreclose Plaintiff's access to the modern intercollegiate athletics market as a result of the NCAA's capricious decision not to apply the Five-Year Eligibility Rule to Plaintiff who has only competed in four seasons thus far. Plaintiff, who has one year remaining in his five-year window, will be denied the opportunity to participate in the five meaningful seasons of his sport that the NCAA itself

has determined should serve as the proper baseline for collegiate athletes, except for Plaintiff's class. That denial is particularly harmful here, where Plaintiff is just reaching his academic and athletic stride later in his collegiate career.

5. Accordingly, Plaintiff seeks the protection of this Court to remedy the NCAA's violation of federal antitrust law through its anticompetitive behavior and arbitrary application of its eligibility rules to Plaintiff.

6. For years, courts have admonished the NCAA for violating the antitrust laws. Rather than clean up its act and discontinue illegally and arbitrarily restricting competition within the market for Division I college athletic labor, the NCAA has declared war. NCAA President Charlie Baker has decreed that, instead of adopting rules and procedures intended to abide by antitrust scrutiny, the NCAA is simply "going to fight them all."[3] Predictably, in a country governed by the Sherman Act, the NCAA's campaign is going poorly. A string of recent decisions finding antitrust violations have determined that the myriad eligibility rules and policies of the NCAA are contrary to the safeguards of antitrust laws and subject to remedy. *See, e.g.*, *NCAA v. Alston*, 594 U.S. 69 (2021), *Ohio v. NCAA*, 706 F. Supp. 3d 583 (N.D.W. Va. 2023), *Pavia v. NCAA*, 760 F. Supp. 3d 527 (M.D. Tenn. 2024); *Martinson v. NCAA*, 2025 WL 2678049 (D. Nev. Sep. 18, 2025).

7. Nonetheless, the NCAA is determined to dictate just who can and cannot access the market for college athletic opportunities. Here, the implementation of the Five-Year Eligibility Rule highlights how arbitrary the NCAA's regulations are. In the same breath, as it allows for certain students to be subject to either the previous rules or the new rule, "whichever is most beneficial to the [college] athlete," it says that athletes who used

[3] Bryan Fisher, Charlie Baker Says NCAA Is 'Ready to Fight' As SCORE Act Stalls in Congress, Sports Illustrated, https://www.si.com/college-football/charlie-baker-ncaa-ready-to-fight-score-act-stalls-congress, Dec. 9, 2025.

"their final season of competition (under previous rules) during [the] 2025-2026" season get no additional eligibility.[4] In other words, because of the NCAA's arbitrary decision to delay the effective date of the Five-Year Eligibility Rule, Plaintiff is barred from receiving a fifth year of eligibility even though his peers and classmates will receive that substantial educational and financial benefit.

8. As courts have determined time and again, the NCAA cannot arbitrarily and unreasonably restrict access to college and the opportunities of collegiate athletic competition. Collegiate athletes are entitled to the value of their services, irrespective of the rules and regulations that the NCAA is trying to enforce upon them. The NCAA's decision to arbitrarily single out Plaintiff, by limiting him to four seasons of competition within a five-year window, is imposing ongoing, substantial harm on him—harm that will, dramatically and negatively, affect the trajectory of his life. Therefore, this Court should prevent the NCAA from imposing arbitrary and unreasonable restrictions on this student-athlete.

**NATURE OF THE ACTION**

9. Plaintiff seeks damages and injunctive relief as his rights are implicated by the Five-Year Eligibility Rule. He brings this action for injunctive relief and damages under Sections 1 and 2 of the Sherman Act and demands a trial by jury. Plaintiff challenges the application of the Five-Year Eligibility rule by the NCAA, which has in the past decade allowed athletes from the high school classes of 2017 through 2021 and 2023 onward to play five seasons, while singling out Plaintiff and all other matriculating

[4] https://www.ncaa.org/eligibility-center/division-i-age-based-eligibility-rules/

2022 classmates who played four-straight seasons, preventing him from playing a fifth.

10. Plaintiff is a talented basketball player who is a 2022 high-school graduate, and he has played four years at multiple NCAA schools, but he has not played in a fifth year. The only barrier to him playing an additional season is the NCAA's arbitrary and capricious enforcement of the Five-Year Eligibility Rule.

11. In *National Collegiate Athletic Association v. Alston*, 594 U.S. 69 (2021), the U.S. Supreme Court unanimously held that the NCAA's limits on education-related benefits for college athletes violate federal antitrust laws and may be enjoined. Since *Alston*, scores of cases have been filed to challenge eligibility rules as illegal commercial gatekeeping restraints.

12. Here, the NCAA's decision bars Plaintiff from participating in the modern intercollegiate athletics market by denying him an additional year of access to scholarship-based participation, specialized academic programming, NIL compensation, national exposure, and professional development pathways. As a result of the NCAA's actions, Plaintiff faces immediate and irreparable harm, including but not limited to loss of athletic opportunity, educational harm, lost academic opportunities, and the benefits and support inherent to being on a collegiate team. Money damages cannot fully compensate Plaintiff for these harms.

13. Accordingly, Plaintiff brings this action to challenge the Five-Year Eligibility Rule.

**JURISDICTION AND VENUE**

14. This action arises under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and Plaintiff seeks to recover damages and secure injunctive relief under Sections 4 and 16 of

the Clayton Act, 15 U.S.C. §§ 15(a) and 26. Plaintiff also seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

15. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. §§ 1-2, and under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. The Court has supplemental jurisdiction over the breach-of-contract claim under 28 U.S.C. § 1367 because that claim is so related to the federal claims that it forms part of the same case or controversy.

16. This Court has personal jurisdiction over the NCAA because it transacts business in Rhode Island, organizes and sanctions intercollegiate athletic competition involving Rhode Island member institutions — including Providence College — and has directed the anticompetitive conduct at issue in Rhode Island that was directed at, and has the intended effect of, causing injury to persons residing in, located in, or doing business in Rhode Island.

17. Venue is proper in this District under 28 U.S.C. § 1391(b) and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, because a substantial part of the events giving rise to the claims occurred in Rhode Island, the NCAA transacts business in Rhode Island, and the injury to Plaintiff is suffered in Rhode Island, where Plaintiff intends to compete for Providence College.

**PARTIES**

18. Plaintiff Derek Simpson is a men's basketball student-athlete, currently enrolled at Providence College. Plaintiff graduated high school in 2022.

19. Defendant NCAA holds itself out as an unincorporated, non-profit educational organization that acts as the governing body of college sports, with approximately 1,100

member colleges and universities throughout the United States, including in the District of Rhode Island. As a practical matter, any institution that wishes to participate at the highest level of college sports must maintain NCAA membership and abide by the Division I rules the NCAA and its members promulgate.

## INTERSTATE TRADE AND COMMERCE

20. The NCAA's conduct substantially affects interstate trade and commerce. The NCAA regulates the market for college athletic labor by promulgating rules to which all member institutions adhere, governing whether and how student-athletes may participate in Division I competition nationwide. Division I athletics generates billions of dollars annually, and the NCAA's eligibility determinations directly affect the interstate movement of athletes among member institutions in different States, including Plaintiff's intent to compete in Rhode Island.

21. The NCAA accepts that its members collectively enjoy a monopsony of power in the market for student-athlete services, such that its restraints can and do harm competition, and that student-athletes "have nowhere else to sell their labor." *Alston*, 594 U.S. at 90.

## FACTUAL ALLEGATIONS

### A. The NCAA's Previous Eligibility Framework ("4-in-5")

22. The NCAA is a "self-governing organization of four-year colleges, universities and conferences committed to the well-being and development of student athletes . . ." NCAA Division I Manual 2026-27, at 1 (const., pmbl.) (hereinafter, "2026-27 Manual," with cited bylaws attached as Exhibit 1)

23. Among other duties, the NCAA promulgates bylaws that govern athletic eligibility. *Id.* at 33-48. Each NCAA division annually publishes a manual containing its eligibility bylaws, and member institutions agree to be bound by them. *See id.*

24. Until June 2026, the NCAA operated under an eligibility framework known as the "4-in-5" Rule.

25. Under that framework, athletes had five years to complete four athletic seasons. NCAA Division I Manual 2025-26, at 46 (Bylaws 12.6, 12.6.1) (hereinafter, "2025-26 Manual," with cited bylaws attached as Exhibit 2) ("A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport. ... A student-athlete shall complete the student-athlete's seasons of participation within five calendar years....").

26. An athlete who sat out a season without competing, whether by choice, injury, or coaching decision, was said to be "redshirting," preserving that season of eligibility for later use.

27. On paper, the bylaws treated "[a]ny competition, regardless of time, during a season in an intercollegiate sport" as "a season of competition in that sport." 2025-26 Manual, at 49 (Bylaw 12.6.3.1). This rule was riddled with exceptions with the NCAA granting waivers for such occurrences as medical hardship, extension-of-eligibility, season-of-competitions, athletics activity, and delayed enrollment.

28. Compounding the arbitrary complexity of those general eligibility rules, the NCAA reserved broad discretion to grant waivers restoring seasons of eligibility. 2025-26 Manual, at 48 (Bylaw 12.6.1.7).

29. The NCAA regularly exercised this power to ensure student-athletes were treated fairly. During the COVID-19 pandemic, for example, the NCAA issued a blanket waiver granting another season of eligibility to student-athletes who competed in 2020-21. David Cobb, NCAA Approves Blanket Waiver for 2020 Fall Sports Athletes To Retain Year of Eligibility, CBS Sports (Aug. 21, 2020), https://perma.cc/J8JZ-3CEW.

30. The NCAA also granted medical hardship waivers restoring seasons in which athletes played limited roles due to injury or illness (see 2025-26 Manual, at 48 (Bylaw 12.6.1.7.1.1(a))) and extended the five-year eligibility window when other "circumstances . . . beyond the control of the student-athlete or the institution" warranted relief (see id. (Bylaws 12.6.1.7.1(a), 12.6.1.7.1.1(b)-(e))).

31. The NCAA liberally granted players additional seasons of eligibility to preserve the "integrity" and "fairness" of intercollegiate athletics. 2025-26 Manual at 1-2 (const., pmbl. & art. I, § C). And given its permissive eligibility process, scores of players, from former professionals to seventh-year seniors, were granted eligibility to participate in college athletics.

**B. The NCAA's New Eligibility Framework ("5-in-5")**

32. In June 2026, the NCAA amended Bylaw 12.6 to replace "4-in-5" with the new "5-in-5" framework. 2026-27 Manual, at 44 (Bylaw 12.6).

33. The new Bylaw 12.6, which went into effect on August 1, 2026 lays out the Five-Year Eligibility Rule. Its states in part:

> 12.6 Five-Year Period of Eligibility. An individual's period of eligibility for practice and competition shall be limited to Five-Years. An individual's five-year period of eligibility begins with the earlier of the following: (Revised: 7/31/14, 6/6/25 effective 7/1/25, 6/24/26 effective 8/1/26)

> (a) The regular academic term (semester or quarter) of an academic year in which the individual enrolls in a collegiate institution (domestic or foreign; see Bylaw 14.02.4) in a minimum full-time program of studies and attends a class in that term while enrolled full time; or
> (b) The beginning of the regular academic year immediately after the individual's 19th birthday.

*Id*. at 44-45.

34. The "5-in-5" framework generally abolishes the prior regime of redshirt years and eligibility waivers. Instead, student-athletes now have five years to compete in five athletic seasons starting from the earlier of their enrollment in college or the academic year after their 19th birthday.

35. Unlike other bylaws in the NCAA's 2026-27 Manual, including many adopted in the same revision conference, revised Bylaw 12.6 does not confine the new eligibility framework to certain enrollment years. Rather, the bylaw became "effective 8/1/26" and applies to all "individual[s]" competing in college athletics. *Id*.

**C. The New Five-in-Five Rule and the Arbitrary Exclusion of the Class of 2022**

36. Under the "5-in-5" framework, student-athletes who first enrolled in college in 2022 are eligible for the upcoming 2026-27 season - their fifth athletic season following enrollment. 2026-27 Manual, at 44-45 (Bylaw 12.6).

37. Yet, despite the NCAA's public representation that the "5-in-5" framework would provide clear and predictable rules governing eligibility, the NCAA announced that it would not apply that framework to student-athletes who competed in their fourth season during the 2025–26 academic year (the "22 Carveout"). See NCAA Division I Age-Based Eligibility Rules: Eligibility 101, available at

https://www.ncaa.org/sports/2026/6/23/ncaa-division-i-age-based-eligibility-rules-eligibility-101.aspx

**D. The 2026-2027 NCAA Manual Contains No Written Exclusion for the Class of 2022**

38. The 2026-27 NCAA Division I Manual, which is the authoritative governing document for the upcoming season, provides that *all* student-athletes shall have five seasons of competition within a five-year eligibility period.

39. The Manual's plain text contains no provision, bylaw, annotation, or other language that excludes, limits, or otherwise treats student-athletes from the high school class of 2022 differently from any other graduating class.

40. The NCAA's purported "exclusion" of the class of 2022 from the "5-in-5" framework exists only in informal guidance documents, website FAQs, and administrative communications – not in the binding Manual that the NCAA requires all member institutions and student-athletes to follow.

41. The NCAA Division I Manual is the governing document for all NCAA member institutions. Under Bylaw 20.01.4, "Division membership criteria constitute enforceable legislation." If the Manual does not contain an exclusion for the class of 2022, no such exclusion exists as a matter of NCAA law.

42. To the extent the NCAA relies on transition provisions or informal guidance to exclude the class of 2022, such provisions are contradicted by and inferior to the Manual's express text granting five seasons of competition to all student-athletes.

43. The absence of any written exclusion in the 2026-27 Manual confirms that the NCAA's position is internally inconsistent and that Plaintiff is entitled to five seasons of competition under the very rules the NCAA itself has promulgated.

**E. The NCAA's Inconsistent Application of Its Eligibility Rules**

44. In another example of inconsistent treatment, the NCAA has allowed former professional players – athletes paid hundreds of thousands or millions of dollars – to return to college without counting their professional seasons. The NCAA counts nothing against millionaire professionals but denies a fifth season to student-athletes like Plaintiff who followed the rules and competed every year.

45. Previously, for decades, the NCAA maintained that an athlete who competed professionally in a sport could not return to play that same sport in college. This was a bedrock principle of "amateurism," the NCAA's longstanding justification for refusing to compensate athletes. The NCAA represented to athletes, recruits, and their families that once an athlete went professional, the door to college athletics was closed.

46. The NCAA has now abandoned that position, but only for certain athletes. In recent years, the NCAA has reinstated many individual athletes who did not otherwise satisfy the Four-in-Five Rule.

   i. James Nnaji played 136 professional basketball games over four seasons in European professional leagues, including 54 paid games in the 2022-23 season alone. He was selected in the 2023 NBA Draft. Despite this extensive paid professional career, the NCAA granted him four full seasons of Division I eligibility at Baylor University beginning in 2025-26. None of his professional seasons were counted against him. Jordy Fee-Platt & CJ Moore, *James Nnaji Commits to Baylor After Being an NBA Draft Pick,* N.Y. Times: The Athletic (Dec. 24, 2025).

   ii. London Johnson signed a contract worth approximately $1.1 million with the

NBA G League and played 84 professional basketball games over three G League seasons. Despite being paid more than a million dollars to play professional basketball, the NCAA granted him a waiver to compete at the University of Louisville.

iii. Moreover, the 2024-25 NCAA Division I college football Championship Game included a quarterback, Will Howard, who began college in 2020 and was completing his sixth NCAA Division I college football season (including one redshirt year).

47. The NCAA has offered no principled justification for this exclusion. The class of 2022 did nothing wrong. They enrolled, competed, and followed the rules as they existed. They were simply unlucky enough to graduate from high school in the one year that the NCAA has arbitrarily determined will not receive five seasons of competition.

**F. Class of 2022 Carveout Litigation**

48. After the NCAA declared it would not apply the “5-in-5” framework to the Class of 2022, athletes sued in courts across the country. They have been overwhelmingly successful. To date, at least thirty-five courts have enjoined the NCAA from enforcing the “22 Carveout” against student-athletes, including many athletes who do not even have a roster spot, and are returning to college after turning pro. https://www.collegesportslitigationtracker.com/tracker.

49. One example of such success is *Wisne v. NCAA*, Civil Action No. 1:26-CV-3063. The Federal District Court for the District of Colorado certified a class action lawsuit for the Class of 2022 student athletes. Additionally, in *Wisne*, the Court granted the Plaintiffs’

Temporary Restraining Order on Sherman Act violation grounds, granting those student athletes eligibility to compete for a fifth season.

50. Another case is *Lorient v. NCAA*, Civil Action No. 1:26-cv-00094-JPB, where the Federal Court in the Northern District of West Virginia has granted a Temprary Restraining Order on behalf of four Division I athletes, permitting those student athletes eligibility to compete in the 2026-2027 season.

51. The NCAA's opposition to these suits is difficult to reconcile with its legislative agenda. While urging courts to deny athletes like Plaintiff a fifth season, the NCAA is lobbying Congress for immediate passage of the bipartisan Protect College Sports Act.

52. That Act would immediately allow "a student athlete" to "compete ... for maximum of 5 calendar years beginning on, whichever occurs first-(A) the beginning of the academic year following the 19th birthday of the student athlete; or (B) the date the student athlete initially enrolls full time at an institution." Protect College Sports Act, S. 4668, 119th Cong. § 113(b)(1) (2026). The NCAA, in other words, is lobbying Congress for the very relief it has denied Plaintiff.

**G. Derek Simpson**

53. Derek Simpson is a Division I men's basketball student-athlete currently enrolled at Providence College.

54. Simpson began his college basketball career at Rutgers University and was part of the 2022-2023 freshman class there.

55. He again attended Rutgers University and played basketball in the 2023-2024 season.

56. Simpson transferred and attended Saint Joseph's University for the 2024-2025 season. Simpson remained at Saint Joseph's University and played his fourth season of college basketball at Saint Joseph's University in the 2025-2026 season.

57. Under the new "5-in-5" bylaw, Simpson is eligible to compete for the 2026-2027 season.

## COUNT I

**Restraint of Trade in Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**

58. Mr. Simpson restates and incorporates each preceding paragraph as if fully set forth herein.

59. Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies that unreasonably restrain interstate trade or commerce. This Court is invested with jurisdiction to restrain and enjoin violators of the Sherman Act.

60. Here, the anticompetitive effects of the NCAA's decision to foreclose certain student athletes from the modern intercollegiate athletics market far outweigh any procompetitive benefits. Eligibility is a prerequisite for athletes both receiving athletic scholarships and earning NIL and other compensation. Therefore, rules that restrict who can play are inextricably tied to an athlete's academic and economic opportunities—both those attained merely by competing in college, such as NIL compensation, and those that accrue over a lifetime from earning advanced degrees during a fifth year of competition. An athlete who is declared ineligible by the NCAA is categorically excluded from the modern intercollegiate athletic market and unable to receive those economic opportunities.

61. The NCAA's Five-Year Eligibility Rule is categorically an arbitrary, capricious, and unreasonable restraint on trade under the Sherman Act. There is no meaningful difference

between Plaintiff and those afforded five years of eligibility by the implementation of the Five-Year Eligibility Rule. The NCAA indicates as much by allowing athletes to claim the eligibility afforded to them under the most favorable interpretation of either the old rules or the new rule—except for the members of the class of 2022.

62. As a result, the NCAA's Five-Year Eligibility Rule in the nationwide market for athletes in Division I sports constitutes an unreasonable restraint on trade. Specifically, the rule produces anticompetitive effects, including but not limited to reduced labor supply, diminished quality of competition, exclusion of athletes due to numerous circumstances beyond their control, and foreclosure of a college athlete's academic, scholarship, revenue sharing, and NIL opportunities tied to eligibility.

63. Courts have consistently found that the NCAA's procompetitive justifications for its eligibility rules are applied inconsistently and undermine any argument that they exceed the devastating anticompetitive effects to college athletes, universities, and consumers. The arbitrary design of the new Five-Year Eligibility Rule, its inflexibility, and the capricious choices made by the NCAA both in limiting exemptions and in categorically depriving virtually all Class of 2022 high-school graduates, but no other class of graduates, of a fifth year of competition undermines the NCAA's procompetitive justifications even more. As a result, the NCAA can no longer plausibly invoke these supposed justifications to enforce the Five-Year Eligibility Rule.

64. Finally, less restrictive alternatives exist within the NCAA's own bylaws. As noted before, the NCAA is already giving athletes who may have different eligibility formulations under the old and new rules the option to apply the rule that is most

favorable to the athlete. The NCAA can do so here by granting the same fifth year of competition to class members who elect to return to campus.

**COUNT II**
**Breach of Contract — Intended Third-Party Beneficiary**

65. Mr. Simpson restates and incorporates each preceding paragraph as if fully set forth herein.

66. The NCAA Constitution and Bylaws constitute a binding contract between the NCAA and its member institutions across the United States.

67. The NCAA determines the eligibility of any college athlete to compete in NCAA Division I sports.

68. Under any interpretation of applicable state law, Plaintiff is an intended third-party beneficiary of the contractual relationship between the NCAA and its respective member institutions, and not merely an incidental beneficiary of that relationship. As intended third-party beneficiary, the Plaintiff is entitled to enforce the NCAA's obligations under the NCAA Constitution and Bylaws. The NCAA breached its obligations to Plaintiff by adopting the Five-Year Eligibility Rule and excluding Plaintiff from the opportunity for an additional season which other athletes are receiving. This exclusion is inconsistent with the reasonable expectations of the Plaintiff of fairness and equity of opportunity between athletes who are third-party beneficiaries of (and subject to the enforcement of) the NCAA Constitution and Bylaws.

69. Plaintiff has been injured by the NCAA's breach of contract, including but not limited to being foreclosed from the opportunity to play a fifth season and from the scholarship and/or NIL money that such a season could bring.

## COUNT III
## Declaratory Judgment

70. Mr. Simpson restates and incorporates each preceding paragraph as if fully set forth herein.

71. Plaintiff seeks a declaration that the NCAA's enforcement of the Five-Year Eligibility Rule is unlawful and unenforceable under the Sherman Act and violates his rights.

72. A real controversy exists because the resolution of this dispute will potentially confer rights upon Plaintiff.

73. The dispute is justiciable because Plaintiff is suffering harm based on the NCAA's enforcement of the Five-Year Eligibility Rule against him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, respectfully asks that this Court:

- Grant Plaintiff's motion for a temporary restraining order enjoining Defendant from enforcing its Five-Year Eligibility Rule against Plaintiff as a violation of the Restraint of Trade in Section 1 of the Sherman Act, 15 U.S.C. § 1 and a violation of the laws governing breach of contract as applicable to Plaintiff as a third-party beneficiary thereby making Plaintiff eligible to compete in the 2026-2027 Division I college basketball season.
- Enter a preliminary injunction enjoining Defendant from enforcing its Five-Year Eligibility Rule against Plaintiff as a violation of the Restraint of Trade in Section 1 of the Sherman Act, 15 U.S.C. § 1 and a violation of the laws governing breach of contract as applicable to Plaintiff as a third-party beneficiary thereby making Plaintiff eligible to compete in the 2026-2027 Division I college basketball season.

- Declare the NCAA's enforcement of its Five-Year Eligibility Rule violates the laws the Restraint of Trade in Section 1 of the Sherman Act, 15 U.S.C. § 1 and the laws governing breach of contract as applicable to third-party beneficiaries;
- Enters judgment against Defendant and in favor of Plaintiff holding Defendant liable for the antitrust violations alleged herein;
- Award Plaintiff damages, exemplary damages, treble damages, and/or punitive damages, as permitted by each statute and/or common law claim;
- Award Plaintiff his costs and reasonable attorneys' fees where permitted by law;
- Grant such other and further relief as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable under Federal Rule of Civil Procedure 38(b).

Plaintiff,
By his Attorneys,

*/s/ Marc DeSisto*
Marc DeSisto, Esq. (#2757)
*/s/ Ryan D. Stys*
Ryan D. Stys, Esq. (#8094)
*/s/ Jeffrey M. DeSisto*
Jeffrey M. DeSisto, Esq. (#10561)
DeSisto Law LLC
4 Richmond Square, Suite 500
Providence, RI 02906
(401) 272-4442
marc@desistolaw.com
ryan@desistolaw.com
jeff@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed with the Court on this 8th day of October 2026, and available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will effectuated by electronic means:

*/s/ Marc DeSisto*