**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| DEREK SIMPSON,<br>Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br>Defendant. | C.A. No. 26-cv-737-MRD-AEM |
| JOSEPH PINION,<br>Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,<br>Defendant. | C.A. No. 26-cv-738-MRD-AEM |

**MEMORANDUM AND ORDER**

MELISSA R. DUBOSE, United States District Judge.

Before this Court are Motions for Preliminary Injunctions filed by Plaintiffs Derek Simpson and Joseph Pinion who seek an order enjoining the NCAA from enforcing any bylaw, rule, or policy that is precluding them from suiting up for the Providence College Friars Men's Basketball team during the 2026–2027 season. Dkt. 737, ECF No. 18 at 37; Dkt. 738, ECF No. 18 at 37. The NCAA maintains that Simpson and Pinion exhausted their collegiate eligibility at the conclusion of the 2025–2026 season and that the new 5-in-5 rule does not apply to them. The primary issue presented is whether Simpson and Pinion have established a likelihood of

success on their claim that the NCAA breached its contract with them as third-party beneficiaries. For the reasons discussed below, the Court concludes that the Plaintiffs have not established a likelihood of success and, thus, their Motions are DENIED.

## I. BACKGROUND[1]

The following background assumes the reader's familiarity with the facts of this case and lays out only those facts necessary to contextualize the discussion below. Readers who are seeking a more robust background are directed to the Court's Order denying Plaintiffs' request for a Temporary Restraining Order. *See* Dkt. 737, ECF No. 14.

### A. Factual Background

Derek Simpson and Joseph Pinion competed in NCAA Division I men's college basketball at their respective schools from 2022–2026. ECF No. 18-1 ¶¶ 4, 6–9 (Pinion Decl.); ECF No. 18-2 ¶¶ 4, 6–9 (Simpson Decl.). During the summer of 2026, following the completion of their fourth season of competition in Division I college basketball, Simpson and Pinion enrolled at Providence College with the hope of competing for the Friars' men's basketball team. ECF No. 18-1 ¶¶ 10–11; ECF No. 18-2 ¶ 10. The season is now underway, but neither Simpson nor Pinion are playing because the NCAA has deemed both individuals ineligible. ECF No. 18-1 ¶ 12; ECF No. 18-2 ¶ 11. Standing in their way is the NCAA's decision to exclude individuals

[1] Simpson and Pinion present identical arguments for this Court's consideration. Throughout this Order, the Court will cite to the *Simpson v. NCAA*, 26-cv-737 docket as the primary source and will cite to each player's specific case only when necessary.

who graduated high school in 2022 and played four consecutive seasons of college athletics from its new rule granting student-athletes five seasons of eligibility over a five-year period.[2] ECF No. 18-1 ¶ 15; ECF No. 18-2 ¶ 13. This "5-in-5" rule was passed on June 24, 2026, took effect on August 1, 2026, and supplanted the old "4-in-5" rule where players were limited to four seasons of eligibility over a five-year period. ECF No. 18 at 7–9.

### B. Procedural Background

On October 8, 2026, Plaintiffs initiated these cases by filing a Complaint (Dkt. 737, ECF No. 1; Dkt. 738, ECF No. 1) and Motion for Temporary Restraining Order ("TRO") (Dkt. 737, ECF No. 3; Dkt. 738, ECF No. 3), with a verified Amended Complaint (Dkt. 737, ECF No. 10; Dkt. 738, ECF No. 10) filed one week later. Plaintiffs' Amended Complaints assert the following claims: (1) Violation of Section 1 of the Sherman Act, (2) Breach of Contract—Intended Third-Party Beneficiary, and

---

[2] The "5-in-5" rule is codified in the NCAA Division I 2026–27 Manual at Bylaw 12.6 and provides the following:

> **12.6 Five-Year Period of Eligibility.** An individual's period of eligibility for practice and competition shall be limited to five years. An individual's five-year period of eligibility begins with the earlier of the following:
>
> (a) The regular academic term (semester or quarter) of an academic year in which the individual enrolls in a collegiate institution … in a minimum full-time program of studies and attends a class in that term while enrolled full time; or
>
> (b) The beginning of the regular academic year immediately after the individual's 19th birthday.

ECF No. 19-6 at 55–56.

(3) Declaratory Judgment. (Dkt. 737, ECF No. 10 ¶¶ 58–73; Dkt. 738, ECF No. 10 ¶¶ 59–74). The Court denied Plaintiffs' Motion for a Temporary Restraining Order after concluding they had not established a likelihood of success on the merits of either the antitrust or the breach of contract claim. ECF No. 14 at 20. The pending Motions for Preliminary Injunction ("MPI"), which were filed on October 29, 2026, focus exclusively on the breach of contract claim; leaving the Sherman Act claim on the bench. *See generally* ECF No. 18. The MPIs are now ripe. Having considered the parties' positions as articulated in their briefing and argued at the November 10 hearing, this matter is now ripe for disposition.

## II. LEGAL STANDARD

"A request for a preliminary injunction … may be granted only if 'the district court finds that … four … factors … weigh in favor of granting the request.'" *Cushing v. Packard*, 30 F.4th 27, 35 (1st Cir. 2022) (quoting *Comcast of Me./N.H., Inc. v. Mills*, 988 F.3d 607, 611 (1st Cir. 2021)). The factors are: "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." *Id.* (quoting *Comcast of Me./N.H., Inc.*, 988 F.3d at 611). "[T]hese four elements are not of equal prominence in the preliminary injunction calculus. The most important is whether the movant has demonstrated a likelihood of success on the merits," a factor that the Circuit makes clear is indispensable to "the preliminary injunction inquiry." *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 92 (1st Cir. 2020) (citing *Ryan v. ICE*, 974 F.3d 9, 18-19 (1st Cir. 2020)). To meet this factor, "plaintiffs

must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (quoting *Respect Maine PAC v. McKee,* 622 F.3d 13, 15 (1st Cir. 2010)). That said, the court "need not conclusively determine the merits of the underlying claims." *Akebia Therapeutics*, 976 F.3d at 93 (quoting *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996)). The court's "decisions 'are to be understood as statements of probable outcomes' only." *Id.* (quoting *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991)).

## III. DISCUSSION

Each year the NCAA issues a Manual, adopted by its member institutions, that "sets forth the fundamental policies and rules ("Bylaws") that govern Division I athletics competition for more than 180,000 student-athletes." ECF No. 19-4 at ¶ 7. Contained in Articles 8 through 23 are the "Operating Bylaws" "which consist of legislation adopted by the membership to promote the principles enunciated in the constitution and to achieve the Association's purpose." ECF No. 19-6 at 10. The "Operating Bylaws" deal with topics such as "Legislative Authority and Process," "Athletics Eligibility," "Division Membership," and "Governance Structure and Committees." *Id.* The Manual also contains a Constitution in Articles 1 through 6 and Administrative Bylaws in Article 31. *Id.* at 3, 8. Also included in the contract –

as more fully described and explained below – is the NCAA's "Adopted Final" legislation.[3]

Simpson and Pinion contend that the plain text of the NCAA Manual supports that they are substantially likely to succeed on the merits of their breach of contract claims. ECF No. 18 at 13. They begin by asserting that they are intended third-party beneficiaries of the NCAA Division I 2026–27 Manual and then move on to argue that the NCAA breached the contract because, under the plain text of Bylaw 12.6, Plaintiffs are eligible for a fifth season. *Id.* at 14–16. Specifically, Plaintiffs argue that the commentary in the legislative proposal is not incorporated into the NCAA's contract, that Bylaw 12.6's effective date does not incorporate the legislative proposal, and that the proposal is not "other legislation" under the Manual. *Id.* at 19–28.

The NCAA disagrees. It argues that Simpson and Pinion are not intended third-party beneficiaries of the contract between the NCAA and its member institutions. And even if they are, they explain, the "5-in-5" rule does not apply to student-athletes who have exhausted their eligibility. ECF No. 19 at 20–24. In support of this position, the NCAA points to the unanimously approved "Adopted Final" legislation which, it contends, is incorporated into the Bylaws and is therefore part of the Manual (or contract). *Id.* at 25–27. The NCAA also argues that Bylaw 12.6 is not retroactive and that, from the beginning, it never intended to apply the "5-

[3] Without getting into the weeds of the parties' arguments yet, it is important to note that Plaintiffs consider some of the language contained within the "Adopted Final" legislation to be mere commentary to the Bylaws, whereas Defendant consider the same language at issue to be the official interpretation.

in-5" rule to student-athletes from the high school class of 2022—as they had already exhausted their eligibility. *Id.* at 27–35.[4] With these arguments outlined, the Court will move on to address each point in more detail.

For Plaintiffs to demonstrate a likelihood of success on their breach of contract claim, they must first demonstrate that they are intended third-party beneficiaries of the 2026–2027 Manual agreed to by the NCAA and its member institutions. In its Order denying the requests for a TRO, this Court questioned whether Simpson and Pinion are intended third party beneficiaries because they had played and exhausted their fourth season of eligibility at the conclusion of the 2025–2026 season. ECF No. 14 at 17–18. Plaintiffs now suggest that the Court's analysis "conflates standing and

[4] There are two additional arguments that are worth mentioning but that the Court will not address in detail. First, the NCAA dedicates a portion of its Response to argue that the Court should decline to grant injunctive relief on a state-law claim because, in its view, the Federal claim under the Sherman Act is unlikely to succeed. ECF No. 19 at 15–20. While the Court did deny Plaintiffs' request for a TRO, which was based in part on the Sherman Act claim not being likely to succeed, that claim remains alive in this Court. Accordingly, the Court will continue to exercise supplemental jurisdiction over Plaintiffs' breach of contract claim, *see* 28 U.S.C. § 1367, and will proceed with the MPI analysis. The second argument relates only to Mr. Simpson, who the NCAA accuses of "forum shopping." ECF No. 19 at 20. As the NCAA notes, Simpson has a pending lawsuit in Pennsylvania in which he challenges the NCAA's decision finding him ineligible to compete for this season and asserts a breach of contract claim. *Id.* at 13–14. As the NCAA represents here, and Simpson does not dispute, "[t]he Pennsylvania court denied [his] request for preliminary injunctive relief after [he] testified at an evidentiary hearing" and that case remains pending in the Pennsylvania Court. *Id.* Simpson argues that the Court should exercise supplemental jurisdiction over his breach of contract claim because there is nothing improper "about a plaintiff whose request for emergency relief was denied in one forum pursuing his case in a forum more closely connected to the dispute." ECF No. 20 at 11. The Court acknowledges this is Simpson's third attempt at relief (including a filed and dismissed case in North Carolina), but it will exercise supplemental jurisdiction over this claim because it does not appear Simpson asserted a Sherman Act (or related state antitrust) claim in Pennsylvania.

merits" and that the question before the Court is "[w]hether Plaintiffs have remaining eligibility …." ECF No. 18 at 15–16. The NCAA contends that the Court got it right because the 2026–2027 Manual was "written for athletes who would compete in 2026–27, not for athletes whose eligibility had already ended under the 2025–26 rules." ECF No. 19 at 21.

To bring a third-party beneficiary claim, Plaintiffs must show that the underlying agreement was entered into "for the benefit of a third party, the latter who would enjoy the benefits[.]" *Hexagon Holdings, Inc. v. Carlisle Syntec Inc.*, 199 A.3d 1034, 1039 (R.I. 2019) (quoting *Glassie v. Doucette*, 157 A.3d 1092, 1097 (R.I. 2017)). Courts have found student-athletes are intended third-party beneficiaries of the contractual relationship between the NCAA and its member institutions as formed by the NCAA Constitution and Bylaws. *See, e.g.*, *Battle v. NCAA*, No. 1:23-CV-101, 2024 WL 4685604, at *4–5 (N.D. W.Va. May 28, 2024); *Richardson v. Southeastern Conf.*, 612 F. Supp. 3d 753, 772 (N.D. Ill. 2020). In addressing a breach of contract claim like the one at bar and reviewing language in the NCAA 2026–27 NCAA Division I Manual, the Rhode Island Superior Court concluded that, "[b]y adopting and enforcing eligibility legislation and committing to student-athlete well-being, the NCAA displayed an intent to confer a benefit on the student-athletes." *Yriondo v. Nat'l Collegiate Athletic Ass'n*, No. PC-2026-04935, slip op. at 11 (R.I. Super. Ct. Sept. 30, 2026).

This Court acknowledges that student-athletes have been deemed time and time again as intended third-party beneficiaries of the contract between the NCAA

and its member institutions.[5] But the ultimate question here is whether athletes who have exhausted eligibility under an old set of rules are intended beneficiaries of a new rule that was adopted after their last season ended and after their graduation. Plaintiffs make a compelling argument that "if Plaintiffs are right that they are eligible under the current manual, then they are indeed 'student-athletes with remaining eligibility,' and thus would have 'standing to enforce the contractual right' the Manual bestows." ECF No. 18 at 16 (plucking phrases from this Court's Mem. and Order denying their TRO). At the MPI stage where Plaintiffs need only establish a likelihood of success on the merits, the Court is going to assume without deciding that these Plaintiffs are intended third-party beneficiaries of the contract. Based on this, the Court will move on to discuss whether Plaintiffs have shown a likelihood of success that the contract was breached.

Under Rhode Island law, to prevail in a breach of contract claim, "a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010). The focus of this

---

[5] In a case addressing the 5-in-5 rule for an individual seeking to gain a fifth year of eligibility to play soccer at Providence College, a State Superior Court colleague explained the following:

> By adopting and enforcing eligibility legislation and committing to student-athlete wellbeing, the NCAA displayed an intent to confer a benefit on student-athletes. Thus, student-athletes … are intended beneficiaries of the contract between the NCAA and its member institution, Providence College.

*Yriondo v. NCAA*, No. PC-2026-04935, slip op. at 11 (R.I. Super. Ct. Sept 30, 2026).

analysis is on the second element—whether the NCAA breached the agreement. Plaintiffs answer that question in the affirmative and base their argument on the plain text of Bylaw 12.6. ECF No. 18 at 16–17. Their argument is straightforward—because Bylaw 12.6 is clear and unambiguous, "the court should apply [the Bylaw] as written." *Id.* (quoting *A.F. Lusi Constr., Inc. v. Peerless Ins. Co.*, 847 A.2d 254, 258 (R.I. 2004)). Plaintiffs go on to suggest that they are eligible to compete in the 2026–27 season because this Bylaw provides that "[a]n individual's five-year period of eligibility begins" with the earlier of when they enrolled in a collegiate institution or "[t]he beginning of the regular academic year" following the individual's 19th birthday, and they meet that criteria.[6] The NCAA's position is that the "Adopted Final" legislation "defined Bylaw 12.6's scope and is part of the rule." ECF No. 19 at 25. It argues that the "Adopted Final" legislation, which is stored in the NCAA Legislative Services Database for the Internet (LSDBi), is explicitly incorporated into the contract and provides how Bylaw 12.6 is to be interpreted.[7] *Id.* When the Bylaw,

---

[6] Plaintiffs latch onto the word "individual" and argue that the NCAA's use of "individual" instead of "student-athlete" supports that Bylaw 12.6 applies to them because they are "individuals" as defined in Bylaw 12.01.2, "and the plain text of Bylaw 12.6 states they still have another season of eligibility." ECF No. 18 at 8–9. Whether Bylaw 12.6 used the term "student-athlete" or "individual" is beside the point. This Court's focus is on whether the "Adopted Final" legislation is incorporated into the Bylaws because if it is (and the Court finds it is), then the statement of interpretation expressly precludes Plaintiffs from competing in the 2026–27 season. If the Court concluded in the other direction, then Plaintiffs would likely be eligible regardless of whether the term "individual" or "student-athlete" was used in Bylaw 12.6.

[7] The NCAA suggests that the following statement in the Adopted Final legislation is the interpretation of Bylaw 12.6:

the Adopted Final legislation, and interpretation are read together, the NCAA contends that Plaintiffs are ineligible. *Id.* at 25–27.

If Bylaw 12.6 is read in a vacuum, the Court agrees that Plaintiffs are eligible to play.[8] But the Court cannot ignore the rest of Bylaw 12 and read Bylaw 12.6 in isolation. Instead, the Court must read Bylaw 12.6 in conjunction with the other provisions and plain text in the contract. *See A.F. Lusi Constr., Inc.*, 847 A.2d at 258 (explaining that "the court should view the agreements in their entirety ....") As the Rhode Island Supreme Court explained, "[w]hen interpreting a contract, [the Court's]

---

> **Source:** NCAA Division I Cabinet
>
> **Effective Date:** August 1, 2026; may be applied to student-athletes with eligibility remaining (seasons and period of eligibility) who initially enrolled full time in any collegiate institution before August 1, 2026. May be applied to student-athletes who initially enroll full time in any collegiate institution in the 2026-27 academic year. (Previous rules may be applied to student-athletes who enrolled before or enroll during the 2026-27 academic year; however, no waivers will be available. Additionally, the legislated exceptions to the previous season of competition rules do not apply to competition that occurs during the 2026-27 academic year through the exhaustion of the student-athlete's Division I eligibility.) Applicable to student-athletes who initially enroll full time in any collegiate institution in 2027-28 and thereafter.

ECF No. 19-31 at 17.

[8] After the hearing on the Motions, Plaintiffs submitted a Notice of Supplemental Authority to bring a new decision to the Court's attention. ECF No. 22. On November 12, 2026, the District of Idaho found a likelihood of success on that plaintiff's breach of contract claim. *Helms v. NCAA*, No. 26-cv-568. ECF No. 22-1 at 41–42. The Court declined to go beyond the plain text of Bylaw 12.6 after finding that language to be plain and unambiguous. *Id.* at 23. While this Court agrees that Bylaw 12.6 on its own appears to be plain and unambiguous, Rhode Island law warns against reading contract provisions in isolation and instructs the courts to read provisions at issue in the context of the entire contract. *Dulong*, 272 A.3d at 127; *A.F. Lusi Constr., Inc.*, 847 A.2d at 258.

primary goal is to ascertain the intent of the parties" which means that "the words used in the contract are to be given their plain and ordinary meaning." *Retirement Bd. of Emps. Retirement Sys. of State v. DiPrete*, 845 A.2d 270, 283 (R.I. 2004). Further, "'instruments referred to in a written contract may be regarded as incorporated by reference and thus may be considered in the construction of the contract' so long as 'the referring language in the contract demonstrates the parties intended to incorporate all or part of the referenced instrument.'" *Dulong v. Merrimack Mutual Fire Ins. Co.*, 272 A.3d 120, 127 (R.I. 2022) (quoting *Management Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1174, 1175 (R.I. 2019)).

With these principles of contract law in mind, the Court clearly must read the relevant provisions carefully to determine what the plain language of the contract means, including the words "legislation" and "interpretation." Bylaw Article 12 covers "Athletics Eligibility" and is the section that contains Bylaw 12.6. ECF No. 19-6 at 44, 55–56. Bylaw 12.01, entitled "General Principles," contains Bylaw 12.01.1, which states, in part, the following:

> Only a student-athlete who meets the athletics eligibility *legislation and interpretation* is eligible for intercollegiate athletics participation in a particular sport. An individual who receives direct or indirect payment for athletics participation, *except as permitted by the governing legislation and interpretations,* is considered a professional athlete.

*Id.* at 44 (emphasis added). Furthermore, the beginning of the manual expressly notes that "[t]he legislation included in the Division I Manual is also available online via the NCAA Legislative Services Database for the Internet (LSDBi)[,] … is updated throughout the year to reflect *any adopted legislation …*[,] and … includes the most

up-to-date legislation available ....” *Id.* at 10 (emphasis added). Moreover, the “Operating Bylaws” section explains that “Articles 8 through 21 are the operating bylaws, *which consist of legislation adopted by the membership* to promote the principles enunciated in the constitution and to achieve the Association’s purposes.” *Id.* There is also provision “VI. LEGISLATION THAT IS SHADED” which references “[l]egislation, [and] incorporations of interpretations.” *Id.* at 12. In a section entitled “Amendments to the Constitution,” the Bylaws explain that “[s]ponsored amendments shall include a statement of intent and rationale.” *Id.* at 22. Finally, Article 9 deals with “Legislative Authority and Process[.]” *Id.* at 28. Within that section is Bylaw 9.2.8, “Intent and Rationale,” which explains that “[a]ll amendments to division dominant provisions shall include a statement of intent and a separate statement of rationale.” *Id.* at 30.[9]

These many provisions referencing “other legislation” and “interpretations” informs that Court that the contract consists of more than just the Bylaws within the four corners of the Manual. Accordingly, to discern the meaning of Bylaw 12.6 and the intent of the parties, the Court looks not only to the plain language of the Bylaw, but these various legislation and interpretations contained in the LSDBi. When the Court looks to the “Adopted Final” legislation it notes that the 5-in-5 Rule was enacted on August 1, 2026 and that the NCAA Division I Cabinet explains that the Rule “may be applied to student-athletes *with eligibility remaining* (seasons and

[9] The Bylaws contain many other references to “legislation” that support that there is a difference between the Bylaws and the legislation. *See, e.g.*, *id.* at 344, 349.

period of eligibility) ...." ECF No. 19-30 at 26. This is where Plaintiffs' attempt at securing eligibility for this season is doomed. Considering the plain language of the contract in its entirety, including the Bylaws, legislation, and interpretations, neither Simpson nor Pinion are eligible to take advantage of the 5-in-5 Rule because, when the new rule was enacted and took effect, neither had "eligibility remaining."[10]

Anticipating the NCAA's counterargument, Plaintiffs argue that the proposal comment is not "other legislation" under the Manual and point to the text and structure of the Manual and "longstanding NCAA practice[.]" ECF No. 18 at 22. In their view, the "proposal commentary" is the legislation interpretation included in the Adopted Final legislation. Beginning with the text and structure of the Manual, Plaintiffs suggest that the Manual defines "other legislation" and that the list does not include "commentary in legislative proposals." *Id.* They point to Bylaw 9.3, "Other Legislative and Amendment Procedures," and suggest that "other legislation" only includes "official interpretations of Bylaws" as explained in Bylaw 9.3.1, "resolutions" as explained in 9.3.2, "special rules of order" as explained in 9.3.3, and "statements of division philosophy" as explained in 9.3.4. *Id.* But Bylaw 9.3, as explained by a colleague in the State Superior Court, explains that "[t]he bylaws, by

---

[10] The Court notes that this conclusion is consistent with the NCAA's publicly stated intent and information posted in their "eligibility center" Online. According to Geoff Silver, Vice President for Division I Governance and Member Services at the NCAA, the NCAA and the Division I Cabinet, starting in spring 2026, repeatedly announced to its member institutions that an upcoming "5-in-5" Rule would not apply to student-athletes who exhausted their eligibility at the conclusion of the 2025–26 season. *See* ECF No. 19-14 at 4–9. As Mr. Silver explains, NCAA announcements went out on April 27, 2026, April 30, 2026, May 12, 2026, May 22, 2026, May 28, 2026, June 12, 2026, and June 24, 2026. *Id.*

their own terms, give the NCAA Division I Cabinet the authority to interpret its Bylaws." *Yriondo*, No. PC-2026-04935, slip op. at 13. Beyond the fact that the Manual delegates the authority to interpret its Bylaws to the Division I Cabinet, however, the Court is perplexed at the Plaintiffs' suggestion that the "Adopted Final *legislation*" is not to be considered as "other legislation."[11] Plaintiffs' endeavors to characterize the "Adopted Final legislation" as "proposal commentary" or a mere "legislative proposal" are unpersuasive.

Next is Plaintiffs' argument that this language is mere "commentary" and that the legislative proposal is not incorporated into the NCAA's contract. ECF No. 18 at 19–20. This argument is unpersuasive because it rests on the premise that the Adopted Final legislation is not incorporated into the contract. As Plaintiffs recognize, "the language of the contract controls," ECF No. 18 at 20, and here the Court cannot ignore the language referencing legislation or interpretations. *See Dulong*, 272 A.3d at 127; *A.F. Lusi Constr., Inc.*, 847 A.2d at 258. *Retirement Bd. of Emps. Retirement Sys. Of State*, 845 A.2d 283. A decision to the contrary would make the repeated references to "other legislation" and "interpretations" meaningless, and that is contrary to the Rhode Island Supreme Court's directive that "the words used

[11] It is not lost on this Court that the NCAA Division I Cabinet unanimously approved the "5-in-5" Rule, including the limitation that it shall not apply to student-athletes who exhausted their eligibility prior to the Rule's enactment on August 1. ECF No. 19-4 ¶ 28. As explained in the Affidavit of Jennifer Henderson, who is the Managing Director of Division I Governance and Members Services at the NCAA, "[t]he Cabinet is a body of member representatives comprised of conference commissioners, university athletic directors, compliance personnel, a professor, administrators, and three student-athlete representatives … ." *Id.* ¶¶ 1, 2, 28.

in the contract are to be given their plain and ordinary meaning." *Retirement Bd. of Emps. Retirement Sys. of State*, 845 A.2d at 283. Plaintiffs go on to argue that "Bylaw 12.6's effective date does not incorporate the proposal comment." ECF No. 18 at 20–22. While Plaintiffs are likely correct that referencing an effective date alone is insufficient to incorporate the Adopted Final legislation, the Court is basing this decision on more than just the effective date. As explained, the Court is looking at the Bylaws as a whole and giving each word its plain and ordinary meaning. This argument is, therefore, unpersuasive.

Finally, Plaintiffs suggest that even if the Adopted Final legislation is part of the contract, Plaintiffs would still be eligible to compete in the 2026–27 Season because the so-called "commentary" says the 5-in-5 rule "may be applied to student athletes with eligibility remaining …." *Id.* at 28–29. Latching on to the word "may," they argue that the Adopted Final legislation "expressed the NCAA's then-existing 'intent' that it '*may*' choose to 'apply' revised Bylaw 12.6 to certain athletes." *Id.* at 28. The "5-in-5" rule does not bar all athletes from the high school class of 2022, just those who do not have eligibility remaining (i.e., exhausted four years of eligibility before "5-in-5" was enacted under the previous 4-in-5 rule). *See* ECF No. 11-4 ¶¶ 14–15; ECF No. 19-7 at 6–7. This explains the NCAA's use of the word "may" in the Adopted Final legislation. *Id.* Further, as admitted by these Plaintiffs, both players completed four seasons of NCAA Division I Men's Basketball and completed their fourth seasons at the conclusion of the 2025–26 season. *See* ECF No. 18-1 ¶¶ 4–9;

ECF 18-2 ¶¶ 4–9. Thus, contrary to their contention, they are ineligible under the language in the Adopted Final legislation.

Thus, given the record currently before this Court, the Plaintiffs are unlikely to succeed in demonstrating that the NCAA has breached the contract by denying them eligibility to compete with the Providence College Friars during the 2026-2027 season.

* * *

Because the Plaintiffs cannot demonstrate a likelihood of success on the merits of the breach of contact claims, the Court declines to engage in the remaining temporary restraining order factors. *See Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 46 (1st Cir. 2005).

## IV. CONCLUSION

Based on the record before the Court and the posture of the case, Plaintiffs have not carried their burden and therefore the Motions for Preliminary Injunction are DENIED.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

November 20, 2026